01 JUL -5 PM 1:13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REBECCA ANN STEPHENS,

Plaintiff,

v.

MEDICAL CENTER EAST, INC.,

Defendant.

CIVIL ACTION NUMBER:
CV-99-B-3070-S

ENTERED
JUL 5 2001

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by defendant Medical Center East, Inc., ("defendant" or "MCE"). Rebecca Ann Stephens ("plaintiff" or "Stephens"), filed this action alleging that defendant terminated her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (Compl. at ¶ 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.[1]

---

[1] Following oral argument on defendant's Motion, the court orally informed the parties of its decision and the basis for determining that defendant was entitled to judgment as a matter of law. The court requested that defendant's counsel submit a proposed opinion to the court in accordance with the court's oral findings. The court has largely adopted the defendant's proposed opinion. However, the court has carefully reviewed the opinion and the conclusions reached in this opinion represent the conclusions of the court.

29

## I. FACTUAL SUMMARY

Plaintiff was employed by defendant, at its hospital, Medical Center Blount ("MCB"), in Oneonta, Alabama. (DX 1 at ¶ 1.)[2] During plaintiff's employment, MCB was a division of MCE, which is a subsidiary of Eastern Health System, Inc. ("EHS"). (DX 1 at ¶ 1.) Plaintiff began her employment with the hospital in 1985, as part-time Supply Clerk. (PX 1 at 9.)[3] Plaintiff became a Senior Supply Clerk in 1993, but her job responsibilities did not change at that time. (DX 2 at 27-28.) In 1994, plaintiff became the Manager of the Materials Management Department, although her job title did not formally change. (DX 2 at 27.)

Plaintiff testified that her duties as Materials Manager included: ordering supplies from vendors for the entire hospital and its affiliated organizations, comparing invoices and purchase orders, dealing with vendors concerning problems with invoices, supervising the supply room employees, supervising the annual inventory, drafting hospital policies, preparing an annual budget for her department, attending monthly meetings of a purchasing alliance, attending monthly department head meetings in the hospital, holding monthly meetings within her department, evaluating and disciplining the employees in her department, and maintaining records on quality assurance. (DX 2 at 31-32, 40-45; PX 1 at 51-53.) Plaintiff's job responsibilities remained the same from 1994 until the end of her employment. (PX 1 at 50.)

---

[2] Defendant filed Defendant's Evidentiary Submission in Support of its Motion for Summary Judgment with attached exhibits on October 2, 2000. References to this evidence will be cited as "DX" followed by the corresponding exhibit number.

[3] Plaintiff filed Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment with attached exhibits on October 23, 2000. References to this evidence will be cited as "PX" followed by the corresponding exhibit number.

While she was Manager of the Materials Management Department, plaintiff supervised the following three employees: Jo Ann Brothers ("Brothers"), Dorothy Foust ("Foust"), and Theresa Blakely ("Blakely"), all of whom were Supply Clerks. (DX 1 at ¶ 2.) As Supply Clerks, these employees handled the physical supply inventory which involved receiving shipments of supplies, stocking supplies in the store room, and distributing supplies throughout the hospital. (DX 1 at ¶ 2.) None of these employees ordered supplies for other departments in the hospital; none selected, negotiated with, or placed orders with vendors. (DX 1 at ¶ 2.) By contrast, as Materials Manager, plaintiff was responsible for all of the ordering functions, and only handled the physical inventory on rare occasions when filling in for an absent subordinate. (PX 1 at 34.)

In January 1999, MCB moved into a new hospital facility, which included a networked computer system, linking the various departments in the hospital to the corporate offices of its parent company. (DX 1 at ¶ 4.) In conjunction with this move to the new hospital, MCB planned to "go on-line" with a new computer supply ordering system, Infinium. (DX 1 at ¶ 4.) Infinium would allow each hospital department to place supply orders directly with the corporate office, rather than through the local supply department. (DX 1 at ¶ 4.)[4]

---

[4] With the Infinium software, individual departments at each of EHS's facilities, including MCB, would be able to place orders directly with the central supply department at EHS, without first submitting an order to their local supply department. Using this computer system, a nurse at MCB would be able to submit her own order for IV pumps, an administrator would be able to submit her own order for notepads, and a maintenance supervisor would be able to submit his own request for mops. [EHS] would then place the order with its chosen vendors (usually at a discount because of its consolidated purchasing) and the supplies would be delivered to MCB for receipt and distribution by the Supply Clerks at MCB.

(DX 1 at ¶ 4.)

According to defendant, plaintiff's position was eliminated on March 10, 1999, because her primary job responsibilities were supplanted by the electronic ordering system. (DX 1 at ¶ 5; PX 1 at 114-16.) The duties of the three remaining employees in the Materials Management Department consisted of physically handling the inventory, receiving, storing, and issuing supplies to all departments, (PX 7; PX 8), none of the remaining employees at MCB perform the ordering functions previously performed by plaintiff. (DX at ¶ 6.) Plaintiff was fifty-four years old at the time she was terminated. (PX 1 at 65.) After the decision was made to eliminate plaintiff's position on March 10, 1999, she was retained as an employee until April 21, 1999, so that she would receive preference for any available job for which she chose to apply. (DX 1 at ¶ 5, 7.) At the time of her layoff, plaintiff was invited to apply for any available job within EHS and given a printout of all the available jobs. (DX 1 at 118-20; DX 7.) MCB's Human Resource Manager informed plaintiff that she would receive priority consideration for any available position for which she was qualified and in which she expressed an interest. (PX 1 at 122-23; DX 12.)

The Human Resource Manager regularly sent plaintiff updated lists of the positions available within EHS. (PX 1 at 127-28; DX 9.) Plaintiff, however, never applied for any position which appeared on the list of available positions. (PX 1 at 128-30; DX 1 at ¶ 8.) Plaintiff only applied for two positions, both of which were occupied. (PX 1 at 128-32; DX 1 at ¶ 8; DX 10; DX 11.) One of the positions plaintiff applied for was not filled by an EHS employee, but was filled by a Maintenance & Mechanical Services, Inc. employee who was assigned to MCB. (DX 1 at ¶ 8.)

In response to plaintiff's application for the two occupied positions, the Human Resources Manager wrote to plaintiff:

> EHS does not have a policy of rolling employees out of positions to make way for employees of positions that are eliminated. As such, your transfer request cannot be honored. You are eligible for comparable positions elsewhere in the system if they are currently vacant, you are qualified and you make application. Enclosed is a copy of the current vacancies at EHS, which includes MCB, a notation of the job line numbers and a transfer request form. We will be happy to accept a completed form for any vacant position.

(DX 12; *see also* PX 1 at 133-35.) Plaintiff never applied for a vacant position. (DX 1 at ¶ 8.)

According to defendant, neither MCB nor EHS allows employees whose positions have been eliminated to bump or displace incumbent employees from their positions. (DX 1 at ¶ 9.) To contest defendant's assertion, plaintiff proffered the Affidavit of Donna Casey ("Casey"), a former employee, who stated that she was involved in several reorganizations and "was unaware" that MCB had a policy against "bumping." (PX 4 at ¶ 2.)

## II. Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex,* 477 U.S. at 324.

"Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted) (en banc), cert. denied, 516 U.S. 817 (1995). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**III. Discussion**

In this case, plaintiff asserts a single claim, that her layoff constituted age discrimination in violation of the ADEA. (Compl. at ¶ 1.) The Eleventh Circuit has adopted a variant of the *McDonnell-Douglas* test for reduction-in-force cases involving circumstantial evidence. A plaintiff in a job-reduction case can establish a prima facie case by demonstrating (1) that she

was in a protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley v. Champion*, 907 F. 2d 1077, 1082 (11th Cir. 1990).

As to the second element of the prima facie case, where a particular job is entirely eliminated, for a plaintiff to prevail against her employer, she must show that she was qualified for another available job with that employer. *Id.* at 1082-83. Qualification for her current position is not enough. *Id.* at 1083. However, "where a plaintiff contends that [her] position has been consolidated or reassigned to other employees, as has been alleged in this case, [she] may establish a prima facie case by demonstrating that [she] was qualified for [her] current position *or* to assume another position at the time of discharge." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998).

As to the third element of the prima facie case, where a job for which the plaintiff is qualified is available at the time of the termination, and the employer offers the job to an individual outside the protected age group, an inference of discrimination is permissible. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996). At this stage of the analysis, the burden on the plaintiff has been described as *de minimus*. *Id.* at 1533 n. 2.

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer, who must articulate at least one legitimate, nondiscriminatory reason for discharging the plaintiff. *Watkins v. Sverdryup Technology, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). The employer's burden is one of production, not persuasion; the ultimate burden of

persuasion remains at all times with the plaintiff. *Id.* The plaintiff then must demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reasons for its actions that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Id.*

The Eleventh Circuit, sitting en banc, recently addressed the plaintiff's burden to show pretext:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. . . . We have recognized previously and we reiterate today that:
>
> > [f]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Chapman v. A. I. Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citations omitted). Thus, a plaintiff does not meet her burden to establish pretext by challenging the wisdom of the decision. Rather, a plaintiff must show that the reason, however misguided, was not the true reason, but was in fact pretext for age discrimination.

**A. Plaintiff's Prima Facie Case**

As to the first element of the prima facie case, plaintiff, age fifty-four, has shown that she was in the protected age group, (PX 1 at 65), and was adversely affected by an employment

decision when her position as Materials Manager was terminated, (DX 1 at ¶ 5). The issue in this case is whether plaintiff was qualified for her current position or another position available at the time of her discharge. Defendant argues that plaintiff's position was eliminated and that she therefore must show that she was qualified for an available position at the time of her discharge. (Defendant's Mem. of Law in Support of its Motion for Summary Judgment at 6.) Plaintiff argues that her position was not eliminated, but was performed by other employees, and that she therefore need only show that she was qualified for her former position. (Plaintiff's Brief in Opposition to Summary Judgment ("Pl.'s Brief") at 9.)

Plaintiff offers three arguments to support her contention that her position was not eliminated. First, plaintiff notes that her official job title remained Senior Supply Clerk until the end of her employment, and the written job description for this position was similar to that of the three remaining employees. (Pl.'s Brief at 2-3.) Second, plaintiff points to a 1997 performance evaluation she received in which her supervisor stated: "[s]he assumed all of the supervisory responsibilities upon the retirement of the department director, while continuing in her previous role." (Pl.'s Brief at 3.) Finally, plaintiff relies on a 1999 performance evaluation given Blakely, a remaining employee, in March 1999, in which the reviewer stated "[s]he has assumed the lead in Materials Management daily operations." (Pl.'s Brief at 4.) From this evidence, plaintiff argues that she was performing the duties of a Supply Clerk immediately before her layoff, and that one of the remaining employees was performing her supervisory duties after her layoff. (Pl.'s Brief at 10.)

Plaintiff's own testimony belies her argument. Plaintiff testified that although her job title did not formally change, she assumed the responsibilities as the Manager of the Material

Department in 1994. (DX 2 at 27.) As plaintiff described her job duties, she received orders from the various departments, selected vendors, negotiated prices, placed orders with vendors, and tracked orders. (DX 2 at 31-32, 40-45; PX 1 at 51-53.) Plaintiff, therefore, was not performing the same job as the three Supply Clerks under her supervision at the time of her layoff. Although her formal job title may not have changed, plaintiff's duties changed. Plaintiff only performed the functions of the Supply Clerks (physically handling the inventory) when one of the Supply Clerks was absent. (PX 1 at 34.) Nor does the statement in Blakely's performance evaluation that she, a Supply Clerk, had "assumed the lead in Materials Management daily operations" show that plaintiff was replaced. (PX 6 at D 0203.) There is no evidence that any of the remaining employees, including Blakely, assumed plaintiff's primary functions in receiving, placing, tracking orders, and negotiating with vendors.[5] These functions were eliminated entirely by the implementation of the Infinium computer system. (DX 1 at ¶ 5.) As noted above, the remaining employees continued to perform their jobs, physically handling the inventory.

To fall under the *Earley* variant of *McDonnell-Douglas*, defendant need not show that every single task performed by a position is eliminated, only that the position itself is eliminated. *Earley,* 907 F.2d at 1083. In *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990) (emphasis added), the Eleventh Circuit held:

> Where a **particular job position** is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough.

---

[5] There is no evidence that the Supply Clerks placed any orders after the Infinium system was instituted.

In applying this test, the *Earley* court noted that the plaintiff's "**position** as inventory control supervisor was entirely eliminated in the RIF" and that "most" of his work was transferred to a computerized system. *Earley*, 907 F.2d at 1083 (emphasis added); *see also Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position."). On this measure, the evidence is undisputed: plaintiff's position as Materials Manager was entirely eliminated, no one was hired to fill her position, no one performed her ordering functions, and the remaining employees in the department continued to perform their jobs physically handling the inventory (receiving, stocking, and distributing). (DX 1 at ¶ 2, 6.)

Because plaintiff's actual position was entirely eliminated, plaintiff must show that she was qualified for an available position. *See Earley*, 907 F.2d at 1083. As described above, plaintiff was encouraged in writing and in person to apply for available positions within EHS. (PX 1 at 118-20; DX 7.) Plaintiff was given regular updates on the positions available within EHS, (DX 9; PX 1 at 127-28). She was also given a phone number to call for more current updates on available positions, (DX 7). She was even given priority in consideration for any position for which she was qualified. (PX 1 at 122-23.) However, plaintiff never applied for any available position within the system. (DX 1 at ¶ 8.)

Plaintiff only applied for two positions, both of which were occupied at the time she applied for them. (DX 10; PX 1 at 130-32.) It is settled law that "[n]othing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired." *Earley*, 907 F.2d at 1083 (citations omitted). Plaintiff must show that she "was qualified

for any position within the defendant company **available at the time of [her] discharge."** *Jameson v. The Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996) (emphasis added). Plaintiff, in fact, testified that she did not apply for any of the available positions on the list and that she was not interested in the one position on the list for which she believed herself qualified. (PX 1 at 128-29, 132.) Upon consideration of the record and the applicable law the court concludes that plaintiff has failed to state a prima facie case.

**B. Evidence of Pretext**

Even if plaintiff could establish a prima facie case, defendant has met its burden by articulating a legitimate, non-discriminatory reason for the elimination of plaintiff's position: the Infinium system made her position unnecessary. (DX 1 at ¶ 5.) Once the defendant satisfies its burden of producing a legitimate, non-discriminatory reason for the challenged employment decision, the plaintiff then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for age discrimination. *See Watkins,* 153 F.3d at 1314. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.

As an initial matter, it is undisputed that the Infinium system supplanted the majority of plaintiff's job duties even as she described them. Plaintiff testified that her primary duties included receiving orders from hospital departments, selecting vendors, placing orders with vendors and following up with vendors about orders. (DX 2 at 31-32, 40-45; PX 1 at 51-53.) With the implementation of the Infinium system, hospital departments would place their supply orders directly, eliminating any involvement of the local supply department. (*Compare* PX 1 at

31-35, 51-54 *with* DX 1 at ¶ 4,5.) Thus, EHS determined that plaintiff's position was no longer needed. (DX 1 at ¶ 5.)

Plaintiff cannot challenge defendant's operational decision to change its supply system and likewise cannot challenge its decision to eliminate her position. As this court has noted previously:

> [T]his court recognizes that a RIF is sometimes an undesirable business necessity. Terminating employees who are serving in a satisfactory manner, and who may have been with a particular company for an extended period of time can be extremely difficult, and can lead to hard feelings and a sense of resentment. However, such actions are sometimes required in the business world. The courtroom cannot take the place of the board room in determining how, where, when and why a RIF should occur.

*Bibby v. Drummond Co., Inc.*, 818 F. Supp. 325, 330 (N.D. Ala. 1993), *aff'd* 20 F.3d 1174 (11th Cir. 1994). It was within the EHS's managerial prerogative to implement the Infinium system and correspondingly eliminate plaintiff's position.

Plaintiff's only attempt to show pretext is based upon the affidavit of Casey, a former employee who purports to have been involved in several corporate reorganizations at the MCB. (Pl.'s Brief at 11.) Casey stated that "[a]t no time during my employment was I made aware of any policy that prohibited long term employees who had been displaced due to job reorganization from bumping incumbent employees out of their positions." (PX 4 at ¶ 2.) Plaintiff, however, presents no evidence from Casey or any other source that any employee whose position had been eliminated was allowed to bump an incumbent employee out of his or her job.

Casey's testimony does not raise any dispute concerning defendant's legitimate non-discriminatory reason for terminating plaintiff, i.e., that plaintiff's vendor-related functions were

eliminated by the Infinium system. The affidavit therefore does not "meet that reason head on and rebut it" as required by *Chapman* to establish pretext.

Moreover, Casey's lack of knowledge about a no "bumping" policy does not lead to the conclusion (or even the inference) that defendant allowed displaced employees to bump other employees from their jobs. (*Compare* PX 4 at ¶ 2 (stating affiant was not aware of policy) *with* DX 1 at ¶ 9 (specifically stating that displaced employees have not been allowed to bump incumbent employees from their positions).) It is not enough to show the lack of a published no "bumping" policy; plaintiff must affirmatively show a practice, formal or informal, of "bumping" because "[n]othing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired." *See Earley,* 907 F.2d at 1083 (citations omitted); *Mitchell v. USBI Co.,* 186 F.3d 1352, 1356 (11th Cir. 1999) (holding that a prohibition on bumping less senior employees from their positions was not a pretext for unlawful discrimination). Plaintiff has not identified a single employee who was allowed to "bump" another employee when his or her position was eliminated, and therefore has failed to show pretext by defendant's failure to allow plaintiff to "bump" an incumbent.

Plaintiff's pretext argument does not address defendant's legitimate, non-discriminatory reason for her layoff, much less meet and rebut it. Her bumping argument can only succeed if she can show a practice (or at least a single incident) of allowing employees to "bump," which she has failed to do. Without rebutting defendant's reason or offering any evidence of a bumping practice, plaintiff has failed to offer any evidence from which a reasonable juror could conclude that the elimination of her position was pretext for age discrimination.

## III. CONCLUSION

Based upon the foregoing, the Court finds that Defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 5th day of July, 2001.

Sharon Lovelace Blackburn
**SHARON LOVELACE BLACKBURN**
United States District Judge